**IMG-154**                                                                **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3003
_____

GERONIMO EQUIHUA MORALES,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-138-475)
Immigration Judge:  Honorable Roxanne Hladylowycz

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 7, 2010

Before:  RENDELL, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>.

(Filed: April 8, 2010)
_____

OPINION
_____

PER CURIAM

Geronimo Equihua Morales is a native and citizen of Mexico.  On November 16,

2002, he came to the attention of the immigration authorities when police pulled over a

van that ran a red light.  R. 312.  Police detained him in the county jail, and during the

interview with an immigration agent that followed, Morales[1] stated that he had entered the United States initially on an H2-B Visa on December 8, 1999, through Laredo, Texas. R. 313. According to the immigration officer's record of the interview, Morales also stated that he remained in the United States for approximately two weeks after his initial entry, returned to Mexico because of "familial troubles," and reentered the United States illegally on January 15, 2000, at an unknown place near Laredo, Texas. R. 312-13.

The Government charged Morales with removability for being present in the United States without having been admitted or paroled. R. 316. Within the allegations, the Government claimed that Morales "arrived in the United States at or near Laredo, Texas, on or about January 15, 2000 . . . [and was] not then admitted or paroled after inspection by an Immigration Officer." Id. Morales denied these allegations and the charge of removability. He sought an adjustment of status based on his marriage to a United States citizen.

The issue at the hearing before the Immigration Judge ("IJ") was whether Morales last entered in December 1999 with a visa (making him eligible for adjustment of status) or if he had left and returned without inspection in January 2000 (rendering him ineligible for adjustment of status). Morales argued that he lied to the immigration officer who interviewed him in jail. Specifically, he stated that a friend advised him to say that he had

---

[1]We note that the petitioner's name is Equihua Morales and that the Government calls him Equihua, but we will use the name that the petitioner himself uses in his brief.

left the country because he could avoid remaining in jail for a long time if he did so. R. 116. He testified that he gave his statement and signed it because he wanted to leave jail and see his girlfriend (who is now his wife). R. 119, 121, 123-24. Morales presented evidence that he was admitted and inspected on December 8, 1999. R. 177, 239. He maintained that he did not leave the country at all, and in support of his contention, he submitted an affidavit from his friend who came to the United States to work at the same time, R. 231, pay stubs from December 1999, R. 222-24, and a money order receipt from January 2000, R. 226. During the hearing, however, his attorney admitted that there was no "primary evidence" (among the documentary evidence) that he was in the country during the time period in question. R. 133. Morales also argued that he was without a lawyer when his statement was taken and that he did not speak English well at the time.

The IJ held that Morales did not establish eligibility for adjustment of status. She held that the documentary evidence that he submitted was not sufficient to establish that he never left the country. Furthermore, she disbelieved Morales's testimony that he never left the United States. She concluded that his credibility was undermined by his admission that he lied under oath to an immigration officer. The IJ also noted that Morales had a motive to lie at the hearing (in order to remain in the United States) while the immigration officer who took his earlier statement had no motive to misreport what Morales said. She concluded that Morales's previous inconsistent statement was reliable and completely undermined Morales's testimony.

3

Morales appealed to the Board of Immigration Appeals ("BIA").  The BIA held that the IJ's adverse credibility determination was not clearly erroneous, agreed that Morales was removable as charged and ineligible for an adjustment of status for being in the United States without having been admitted or paroled after inspection.  Morales, through counsel, presents a petition for review.

We have jurisdiction over Morales's petition under 8 U.S.C. § 1252.  We consider questions of law de novo.  See Gerbier v. Holmes, 280 F.3d 297, 302 & n.2 (3d Cir. 2002).  We review factual findings, like an adverse credibility determination, for substantial evidence.  See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005).  An adverse credibility finding must be afforded substantial deference, so long as the finding is supported by sufficient, cogent reasons.  See id. at 434.

The adverse credibility finding in this case is supported by substantial evidence.  As the IJ noted, Morales had a motive to lie at the hearing (in order to remain in the United States) while the immigration officer who took his earlier statement had no motive to misreport it.  In his earlier statement, Morales admitted that he had left the United States for a brief period and returned illegally.  Although Morales has argued that he did not speak English well at the time that he gave his prior statement, he admitted that an immigration officer spoke to him at the time in Spanish (although the officer did not speak Spanish well).  R. 113.

4

Other evidence in the record does not compel a contrary conclusion or establish that Morales is eligible for adjustment of status. That is, although there is evidence in the record that he was initially inspected and admitted as a visitor in 1999, R. 177, 235, 238-39, the documentary evidence is not sufficient to establish that he never left the country. Although Morales argues to the contrary, the pay stubs he presented do not show that he was in the United States in the time in question. Although his pay checks were issued in January 2000, they were for work that he completed in December. R. 222-24. Also, the money order receipt in the record gives two conflicting dates and cannot serve as conclusive evidence of Morales's presence in the country. Specifically, the money order gives the "date of delivery" as January 7, 2000, but it also gives the "date in U.S.A." as January 31, 2000. R. 227. (Morales also suggested at his hearing that his boss was the person actually sending Morales's money to Mexico. R. 120.) Also, the affidavit of a friend who noted that he and Morales changed jobs after being in the United States for a month and made the present tense statement "we are here working without going to Mexico," R. 231, does not prove that Morales did not leave the United States in January 2000.

For these reasons, we cannot conclude that the BIA erred. Accordingly, we will deny Morales's petition for review.